**Application of Larry H. KLINE and Milosh L. Ukmar.**

**Patent Appeal No. 8870.**

United States Court of Customs and Patent Appeals.

March 22, 1973.

Rehearing Denied June 7, 1973.

Albert L. Ely, Jr., Cleveland, Ohio, Ely Golrick & Flynn, Cleveland, Ohio, attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the examiner's rejection of claims 2–11 and 15–20 of appellants' patent application serial No. 430,418, filed February 4, 1965, for "Antenna With Rotatable Sensitivity Pattern." Three claims are allowed.

The only issue of patentability raised before us by appellant, and the issue on which we decide the appeal, is the board's affirmance of the rejection of obviousness over the prior art under 35 U.S.C. § 103. However, we will also dispose of appellants' contention relative to the examiner's refusal to enter an amendment and will discuss a matter pertaining to a recommendation under Patent Office Rule 196(c) as to certain rejected claims.

Appellants' invention relates to a stationary antenna which has a rotatable sensitivity pattern. The preferred embodiment will be described with references to Figs. 2 and 4 of the application drawings:

Fig. 2

Fig. 4

The antenna comprises an array of three identical units 11, 12, and 13 which are supported in fixed spacial relationship by a supporting means, not shown. Each unit is half-wavelength dipole which is center-fed through coaxial cables 28, 29, and 30 extending from a relay box 10 which contains relays operable selectively to connect any one of the antenna units to a radio transmitter-re-

ceiver unit. At the time one antenna unit is so connected, the other two units are disconnected through their relays and, in the words of appellants' brief, "made *electrically*, rather than physically, longer so as to provide the greater 'length' necessary for them to function as so-called 'parasitic' reflectors for the radiation from the energized unit in front of them." This electrical lengthening of the dipoles may be accomplished by making the coaxial cables 28, 29, and 30 of such length as to present an inductive reactance when open-circuited at the relays through disconnection from the radio apparatus. As alternatives, cables of a length which presents an inductive impedance when short-circuited may be used in an appropriate manner or inductive reactances separate from the cables may be selectively connected across the center gap of the disconnected dipole units.

The application states that the spacing between units 11, 12, and 13 is "adjusted empirically to provide the optimum directional pattern for the array." It further states that a 0.15 wavelength spacing as indicated in Fig. 2 was found to give a directional pattern as shown in Fig. 4 in which the configurations 60, 61 and 62 represent the sensitivity characteristics of the array when antenna units 11, 12, and 13, respectively, are activated.

While only a three-unit array is shown and described, the application concludes with the following statement:

* * * if desired, instead of three antenna units there may be four or more in the array, energized separately one at a time and provided with inductive reactances when idle so as to provide a parasitic reflector for the antenna unit which is then energized.

Claim 2, used by appellants as illustrative, reads:

An antenna for producing a rotatable sensitivity pattern comprising three or more center-fed dipole antenna units spaced apart from each other and each having a pair of radiating elements separated by a dipole gap, switching means having connections to said antenna units and operable selectively to energize the latter one at a time, and means connected to said switching means and providing an inductive reactance between the radiating elements of each of the remaining de-energized antenna units to enable the latter to act as parasitic reflectors for the energized antenna unit.

Claims 3–11 and 15–20 are somewhat more specific but will not be treated individually because appellants have not pointed out, and we do not find, any additional limitations in them that would make their subject matter unobvious if that of claim 2 is not.

The references relied on are:

Wernick et al.
  (Wernick)    3,175,219    Mar. 23, 1965
Matsudaira    2,349,976    May 30, 1944
Yagi          1,860,123    May 24, 1932

Wernick discloses an antenna array which can be electrically switched to offer its greatest effectiveness in a selected direction. As described in appellants' brief:

* * * Wernick shows a four-cornered, five element array whose radiation sensitivity pattern may be rotated angularly to provide maximum gain along the line of any selected corner antenna unit 17, 21, 22, or 23. Each of these four corner units is a center-fed, half wavelength dipole. The switching arrangement causes only one corner unit at a time to be energized, or "driven". A *dimensionally longer* fifth element * * * at the center of the array acts as a reflector for whichever corner unit is energized at any particular time. The other three corner units are *grounded*; being dimensionally and electrically the same length as the active corner unit, *they do not and cannot act as reflectors* for the active unit. [Emphasis by appellants.]

Matsudaira relates to an antenna system comprising two spaced, vertical, center-fed dipole units of one-half wave-

length. The system is particularly useful for producing radiation that identifies a runway for blind landing of aircraft. The reference discloses that radiation fields extending in opposite directions from the respective units are obtained by switching between a condition where a first unit is activated and the second serves as a reflector and a reverse condition where the second is activated and the first serves as a reflector. In each case the unactivated unit functions as a reflector by reason of its being made electrically more than one-half wavelength long through the open-circuited feed line connected thereto acting as an inductance.

Yagi discloses an antenna system comprising an energized center antenna element and a plurality of split antenna units disposed thereabout on circles concentric with the center antenna and of different diameters. The operative direction of the system is adjusted as desired by means for selectively connecting some of the split elements to have an effective length greater than one-half wavelength so as to act as reflectors, and for disconnecting others so that they have a length less than one-half wavelength and act as directors.

Claims 2–11 and 15–20 stand rejected for obviousness under 35 U.S.C. § 103 in view of Wernick considered with Matsudaira or Yagi.

OPINION

We find no error in the rejection under section 103. As the board recognized, Matsudaira teaches not only that an unenergized dipole adjacent to an energized dipole may be made to serve as a reflector by changing its effective length but also that the condition of the two dipoles can be reversed to reverse the direction of sensitivity of the antenna array. That disclosure would, we think, suggest to one of ordinary skill in the art that the grounded dipoles in each of the four conditions possible in Wernick be similarly connected to have in-

creased electrical length to serve as reflectors. In addition, Yagi's disclosure of making a plurality of associated antenna units effectively more than one-half wavelength long to serve as reflectors for an energized element in the same array would similarly suggest modification of Wernick by adapting Wernick's grounded dipoles to serve as reflectors.

■ Appellants have based their argument to a considerable extent on matters related to the examiner's questioning of the sufficiency of appellants' disclosure as to an array using "more than three" antenna units. As background, the examiner, in response to an argument by appellants concerning the spacing of the antenna units, questioned how the 0.15 wavelength separation disclosed in appellants' application (see Fig. 2, supra, ".15λ") could be obtained with an array of more than three units, as for example, a five-unit array. When appellants subsequently sought to add an amendment including a drawing showing five units spaced along on a circle so that each element was 0.15 wavelength from its two adjacent units but a greater distance from the remaining two, the examiner refused entry on the ground that new matter was involved. The examiner also rejected all the claims now on appeal under 35 U.S.C. § 112 on the ground that the recitation of "three or more" units in the claims covered a class of arrays not adequately disclosed in the original application. The board held the question of entry of the amendment was petitionable to the Commissioner rather than appealable and did not rule on it. However, the board did consider the rejection for lack of supporting disclosure and reversed it, stating:

It is our opinion that one of ordinary skill in the art having Appellants' disclosure before him and being aware of the prior art as exemplified by the Yagi patent, for example, would find it merely a matter of design to choose the proper spacing for more than three antennas. This is borne out by

the affidavit of Mr. Horn filed April 7, 1969.[1]

Appellants consider this ruling by the board and its affirmance of the § 103 rejection to represent

* * * the self-contradicting position to the effect that, if applicants' combination would work for four or more units—and the prior art teaches that it wouldn't—then the enlarged combination [more than three units [2]] must be obvious despite the contrary teachings of the very prior art relied on for obviousness.

This position is simply unsound. There is no inconsistency in finding, as the board did, both that appellants' application is adequate to enable any person skilled in the art to make and use the invention, under the first paragraph of § 112, and that the invention is also obvious in view of the prior art under § 103.

Appellants would have us make a determination with respect to the board's refusal to decide whether the proposed amendment showing a five-unit antenna array was properly refused entry by the examiner. However, this is primarily a matter of Patent Office procedure which does not affect our review of the rejection of the appealed claims, and we fail to see any reason why we must decide it.

The board also affirmed a rejection of claims 6, 7, 19, and 20 for indefiniteness under the second paragraph of § 112, recommending under Patent Office Rule 196(c), on reconsideration, that this rejection be withdrawn if certain changes suggested by appellants were

made in claims 6 and 19.[3] At the same time, the board expressly stated that the recommendation did not affect its affirmance of the rejection of these same claims under § 103.[4] We agree with the board that the recommended changes, as shown in the record, would not affect the applicability of that rejection to these claims.

The decision is affirmed.

Affirmed.

1. The Horn affidavit was submitted by appellants with the unentered amendment. It states that a five-element array as described in the amendment was built and operated under the affiant's supervision in January of 1969. It also asserts that this "five element antenna array is identical in all respects to the three element array shown in Figs. 1–4 of * * * [the] application and described with reference to those Figures, except for use of five equally-spaced vertical antenna units instead of three."

2. Appellants further state in their brief that "All the appealed claims call for arrays of 'three or more' and, thus, cover arrays of more than three units, as well as arrangements having just three units * * *."

3. Claims 7 and 20 are dependent on claims 6 and 19, respectively.

4. Appellants do not ask review of the indefiniteness rejection itself, apparently considering it "overcome" because of the recommendation.